IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br><br>STONEY WESTMORELAND,<br><br>Defendant. | **MEMORANDUM DECISION<br>AND ORDER<br>DENYING MOTION TO RECUSE**<br><br>FOR PUBLICATION<br><br>Case No. 2:19-cr-00014<br><br>Howard C. Nielson, Jr.<br>United States District Judge |

Defendant Stoney Westmoreland has been indicted for an alleged violation of 18 U.S.C. § 2422(b), which forbids attempting to "knowingly persuade[], induce[], entice[], or coerce[] any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity." He now moves to recuse me. He states that he is a bisexual man, and that the trial will require discussion of "the homosexual male lifestyle, particularly 'the hookup culture,' which is distinctly non-traditional." Dkt. No. 50 at 3–4. He anticipates calling gay men as witnesses who will testify about his "transition from a heterosexual marriage, to being an out, homosexual man." *Id.* at 4. For the following reasons, the motion is denied.

**I.**

Under 28 U.S.C. § 455(a) and (b)(1) a judge must disqualify himself if "his impartiality might reasonably be questioned" or if "he has a personal bias or prejudice concerning a party."

*See also Bryce v. Episcopal Church in the Diocese of Colorado*, 289 F.3d 648, 659–60 (10th Cir. 2002).[1] But if "no reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality," the motion to recuse must be denied. *Id.* (citation and internal quotation marks omitted). Indeed, a judge has "as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require." *Id.* at 659 (citation and internal quotation marks omitted).

## II.

Defendant moves to recuse me based on my role, many years before my appointment to the federal judiciary, as a member of the litigation team representing the official proponents of California's Proposition 8—a state constitutional amendment stating that "[o]nly marriage between a man and a woman is valid or recognized in California"[2]—and, in particular, positions that he asserts that I advanced during my cross-examination of two expert witnesses at a trial regarding the validity of Proposition 8 under the federal constitution.[3]

---

[1] I can state categorically and unequivocally that I do not harbor any personal bias or prejudice concerning Mr. Westmoreland. Accordingly, recusal is appropriate only if my impartiality might reasonably be questioned.

[2] Cal. Const. Art. I, § 7.5. In *Perry v. Schwarzenegger*, 704 F. Supp. 2d 921 (N.D. Cal. 2010), the district court ruled that Proposition 8 violated the federal constitution. In *Hollingsworth v. Perry*, 570 U.S. 693 (2013), the Supreme Court held that the official proponents of this provision lacked standing to appeal that ruling.

[3] Defendant provides no citations for the positions that he believes I advanced during these cross examinations. It is worth noting that primary purposes of these cross examinations were to admit into evidence studies, books, and articles—many of which were the work of the opposing parties' own experts and other prominent authorities—and to confirm and clarify the views of the expert witnesses whom I was cross examining. For these reasons, many of the questions that I asked incorporated direct quotations from the works of the opposing parties' experts themselves or of other prominent authorities. A substantial portion of the positions that Defendant identifies appears to be drawn from such quotations.

Defendant's motion rests on two significant assumptions. First, Defendant assumes that the views of my former clients and the positions that I took on their behalf reflect my own personal views. Second, Defendant assumes that the positions that I took as a private attorney on behalf of my clients will determine or otherwise improperly influence my conduct and rulings as a judge. Neither assumption is reasonable.

A reasonable person, knowing all relevant facts, would understand that as a private attorney I was obliged to "act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf." Model R. Prof. Conduct 1.3 cmt. 1; *see also* Utah R. Prof. Conduct 1.3 cmt. 1; D.C. R. Prof. Conduct 1.3(a). A reasonable person would also understand that "[a] lawyer's representation of a client … does not constitute an endorsement of the client's political, economic, social or moral views or activities." Model R. Prof. Conduct 1.2(b); *accord* Utah R. Prof. Conduct 1.2(b); D.C. R. Prof. Conduct Rule 1.2(b).

Our adversarial legal system depends on the shared understanding and acceptance of these principles. As Chief Justice Roberts explained during his confirmation hearing, the settled understanding "that you don't identify the lawyer with the particular views of the client, or the views that the lawyer advances on behalf of a client, is critical to the fair administration of justice." *Confirmation Hearing on the Nomination of John G. Roberts, Jr. to be Chief Justice of the United States Before the Senate Comm. on the Judiciary*, 109th Cong. 254 (2005). The comments to the Model Rules of Professional Conduct further explain that "[l]egal representation should not be denied to people … whose cause is controversial or the subject of popular disapproval. By the same token, representing a client does not constitute approval of the client's views or activities." Model R. Prof. Conduct 1.2 cmt. 5. Criminal defendants, including Defendant here, and their counsel, including the many devoted federal defenders in this and other

3

districts, surely can appreciate the increased access to legal representation and other benefits to our justice system that these long-established principles promote. And based on "the longstanding principle that a client's views are not imputed to the lawyer," other judges have properly denied motions to recuse that are based on positions they took as private lawyers on behalf of their clients prior to their appointment to the bench. *E.g.*, *United States v. Black*, 490 F. Supp. 2d 630, 664 (E.D.N.C. 2007).

A reasonable person, knowing all relevant facts, would also understand the different roles of judges and private attorneys in our legal system. Such a person would accordingly recognize that my conduct and rulings as a judge will not be determined or improperly influenced by the positions that I took as a private attorney on behalf of my clients. As Justice Kagan explained at her confirmation hearings, as an attorney she "approach[ed] . . . cases as an advocate from the perspective of" her client and did not "look at both sides in the way you do as a judge." *Confirmation Hearing on the Nomination of Elena Kagan to be Associate Justice of the United States Before the Senate Comm. on the Judiciary*, 111th Cong. 92–93 (2010). When Justice Kagan represented a client, her perspective thus was that "I have a client and I'm the best advocate I possibly can be for that client." *Id.* at 170. By contrast, "the role of a judge is—is different from the role of an advocate, and it's important to recognize that." *Id.* Similarly, Judge Motley of the Southern District of New York denied a motion to recuse herself that was based on her representation as a private attorney of plaintiffs "in civil rights litigation" and the fact that she "happen[ed] to be of the same sex as a plaintiff in a suit alleging sex discrimination," correctly concluding that the argument that these factors indicated that she was "so biased that . . . she could not hear the case" came "nowhere near the standards required for recusal." *Blank v. Sullivan & Cromwell*, 418 F. Supp. 1, 4 (S.D.N.Y. 1975). My private practice no doubt differed

4

from Judge Motley's, but any suggestion that positions taken as a private attorney on behalf of clients prior to appointment to the bench—whether the clients or their positions are popular or unpopular—somehow indicate that a judge cannot fairly preside over an unrelated case implicating arguably similar issues is surely unreasonable.

Indeed, even if I in fact held the personal views that Defendant imputes to me based on positions that he believes I advanced on behalf of my clients—and I do not—a reasonable person would not assume that as a judge I would follow those views rather than the law that I have sworn to uphold. "[C]ourts have rejected the notion that such generalized policy views necessitate recusal as a matter of course." *United States v. Payne*, 944 F.2d 1458, 1476 (9th Cir. 1991). "As long as the judge is capable of refining his views in the process of this intellectual confrontation, and maintaining a completely open mind to decide the facts and apply the applicable law to the facts, personal views on law and policy do not disqualify him from hearing [a] case." *S. Pac. Commc'ns Co. v. Am. Tel. & Tel. Co.*, 740 F.2d 980, 991 (D.C. Cir. 1984); *see also United States v. Wilkerson,* 208 F.3d 794, 797 (9th Cir. 2000); *Com. of Pa. v. Local Union 542, Int'l Union of Operating Eng'rs,* 388 F. Supp. 155, 168 (E.D. Pa. 1974).

## III.

Nor do statements made by members of Congress who opposed my nomination provide grounds for my recusal. In recent years many nominations, including my own, have drawn significant political opposition. A reasonable person, knowing all relevant facts, would not conclude that statements made by politicians who opposed my nomination accurately reflect my personal views, let alone that such statements indicate how I might rule as a judge in any particular case. The statements relied on here, moreover, reflect the same unreasonable assumptions discussed above—that the views of my former clients and the positions that I took

5

on their behalf reflect my own personal views and that those positions will determine or otherwise improperly influence my conduct and rulings as a judge.

*   *   *

For the foregoing reasons, the motion to recuse is **DENIED**. **IT IS SO ORDERED**.

DATED this 6th day of December, 2019.

BY THE COURT:

Howard C. Nielson, Jr.
United States District Court Judge